IN THE UNITED STATES DISTRICT COURT OF TENNESEE
WESTERN DISTRICT AT MEMPHIS

JOHN J. JOHNSON JR.,

    Plaintiff,

vs.

FEDERAL RESERVE
BANK OF ST. LOUIS,
MEMPHIS, TENNESSEE
BRANCH,

    Defendant.

Civil Action No._____
JURY TRIAL DEMANDED

## COMPLAINT

Comes now Plaintiff, John J. Johnson Jr., Pro se litigant and files civil action against Defendant Federal Reserve Bank of St. Louis, Memphis Tennessee Branch. Plaintiff also files this action to protect all Notice of Suit Rights pursuant to U.S. Equal Employment Opportunity Commission's Right to Sue Notice dated July 29, 2011. Plaintiff fully anticipates a subsequent Motion to Join to follow this action shortly thereafter. Plaintiff for cause of action would show unto the court as follows:

### INTRODUCTION

1. This is an action brought by the named Plaintiff, John J. Johnson ("Plaintiff"), against the Federal Reserve Bank of St. Louis Memphis, Tennessee Branch ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 2000(e) et seq., to secure declaratory relief as well as all damages available to Plaintiff, including those available under the Civil Rights Act of 1991, 42 U.S.C. 1981(a).

This cause of action is brought against Plaintiff's former employer, Defendant, and alleges racial discrimination and retaliation in the terms and conditions of his former employment on account of his race, black, and on account of retaliation based on Plaintiff having engaged in prior protected activity

## JURISDICTION AND VENUE.

2. Jurisdiction is conferred upon this Court under the provisions of Title VII, 42 U.S.C. 2000(e)-5(i)(3), and pursuant to 28 U.S.C. 1331 and 1343.

3. Venue is appropriate in this district pursuant to 28 U.S.C. 1391(b) and (c) inasmuch as Defendant is subject to personal jurisdiction in this judicial district and the events giving rise to the claims occurred in this district.

## CHARGING PROCESS

4. Plaintiff timely filed a Charge of Racial Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 490-2009-00139, on or about October 20, 2008.

5. Plaintiff timely filed a second Charge of Discrimination with EEOC, Charge No. 490-290-00574, on his birthday December 09, 2008.

6. Plaintiff timely filed a third Charge of Discrimination and Retaliation with EEOC on August 24, 2009, Charge No. 490-2009-02757, after Plaintiff was terminated from employment on August 13, 2009 after the Defendant was served with Plaintiff's previous federal civil action alleging racial discrimination and retaliation reference the first and second above-mentioned EEOC Charges. Plaintiff's firing occurred after Plaintiff engaged in protected activity.

Plaintiff received his Right to Sue Notice for said charge on or about August 01, 2011. Plaintiff's third Charge and Right to Sue notice are attached hereto as Exhibit A and Exhibit B, respectively, and incorporated by reference herein.

7. Plaintiff has exhausted all administrative remedies.

8. This action is timely filed.

## PARTIES

9. Plaintiff is an adult African American male citizen of the United States, who is a resident of Memphis, Shelby County, Tennessee and who was employed as a Police Sergeant in the Law Enforcement Unit with the Federal Reserve Bank of St. Louis, Memphis Tennessee Branch.

10. Defendant is, upon information and belief, an entity doing business in Memphis, Tennessee as a branch office of the Federal Reserve Bank of St. Louis.

## FACTS

11. Plaintiff was hired by the Defendant on or about June 28, 2004 as an officer in the Law Enforcement Unit of the Memphis Branch of the Federal Reserve Bank of St. Louis and since or about February 16, 2008 was serving in the same unit and branch as a Sergeant.

12. On or about May 29, 2007, Plaintiff, along with multiple other black officers, filed an internal Class Action EEO complaint, dated May 25, 2007, against Sergeant Gene Gai, white male, for creating a hostile work environment and disparate treatment based on race. Plaintiff was the Lead Complainant due to the fact that other black officers were intimidated by the Defendant.

This complaint was submitted to James Price, Assistant Vice President and EEO Officer. As a result of the complaint and the preponderance of the evidence submitted by Complainants, Sergeant Gai was only demoted. Plaintiff, also a similar situated Sergeant was terminated on or about August 13, 2009 for a much lesser alleged offense and received disparate treatment based on race. Gai is currently still employed by the Defendant as of September 2011. The Defendant has a long established history of treating black male employees with disparate treatment and pure disrespect based on race when compared to white male employees. Plaintiff will detail this fact more fully in this action.

13. Also named in the internal Class Action EEO complaint were then Officer and now Lieutenant/Assistant Manager Don Heeke ("Heeke"), white male and Captain William (Bill) Pinkert ("Pinkert"), white male.

14. Formerly, Plaintiff's first line supervisor was Lieutenant Heeke. Heeke's first line supervisor was Captain Pinkert.

15. On or about April 14, 2008, Plaintiff reported a subordinate's, Officer Michael Raye, white male, unsatisfactory work performance to Heeke and Pinkert. Officer Raye is a close and personal friend of Heeke. They both worked together for years at the Louisville branch prior to transferring to the Memphis branch.

16. As a Sergeant, it was Plaintiff's responsibility to report a subordinate's unsatisfactory work performance to his supervisors. No disciplinary action was taken against Officer Raye despite requirements that Officer Raye be disciplined. Raye stated to Plaintiff that he was not concerned by what was reported to Heeke.

4

Yet, Plaintiff was disciplined for alleged lesser infractions despite providing witness statements and other evidence that rebutted the alleged reasons for Plaintiff's disciplinary actions by the Defendant.

17. Included in the infractions committed by Officer Raye that were reported by Plaintiff on or about April 14, 2008 were reports that Officer Raye was sleeping while on duty numerous times. In an April 22, 2008, memo from Assistant Vice Vice President William M. Francis, officers in the Law Enforcement Unit were reminded that the ordinary response for sleeping on duty is termination. Yet Supervisor Heeke, white male, allowed his personal friend Raye, white male, to continuously violate said policy as reported by numerous black officers as recorded by the Defendant's Investigation Notes prepared by Human Resources Assistant Manager Faye Jones on or about September 10 & 11, 2008 attached hereto as Exhibit C, respectively, and incorporated by reference herein. At least one incident of Officer Raye sleeping on duty was witnessed by Heeke and recorded by the Defendant's own internal EEO investigation report referenced above as Exhibit C. Officer George Simms verified this fact.

18. Supervisor Heeke borrowed his subordinate and personal friend Michael Raye's privately owned vehicle on or about April 2009 for two days. Heeke used Raye's vehicle to drive his step-daughter to Little Rock, AK. Plaintiff and several other officers including Michael Messenger, James Lee, Vicky Dowery and others witnessed Raye driving Supervisor Heeke's personal owned vehicle.

19. Michael Raye, white male, also was involved in a training session with Officer George Simms. At the conclusion of the session, Raye pulled out his personal knife and while horse playing cut his hand. Supervisor Heeke and Bill Pinkert arranged for Raye to file a worker's compensation claim for a non-work related injury that resulted in Raye missing 3 paid work days.

20. Training Supervisor Marlan Ingram wrote two statements regarding the injury stating that the training session was already concluded when Raye cut his finger. Eye-witness George Simms attested to the same.

21. One of Ingram's statements alluded to the fact that Heeke and Pinkert were implying that Ingram was present and conducting training at the time of the injury. Mr. Ingram rebutted that falsification by explicitly stating that the training session was over and he was not present at the time of injury and that the training department utilizes a plastic knife for training purposes.

22. Ordinary citizens engaging in such a conspiracy similar to what Raye, Heeke and Pinkert conspired would probably face criminal prosecution for possible fraud against the State of Tennessee. Such conduct is unbecoming of any federal Law Enforcement Unit, and also violated Defendant's company policy.

23. The Defendant's internal EEO investigative report, Exhibit C, records numerous black officers giving testimony that Raye received favorable treatment because of his race, white male and his personal relationship with Lieutenant Heeke whom wrote Raye's semi-annual and annual performance evaluations without any input from Plaintiff, a Sergeant.

24. Officer Michael Raye was finally fired on or about July 2009 after once again sleeping on duty. However, this particular company policy violation Raye was in such a deep sleep that Officer William Holloway had been banging and beating on the door for several minutes and Raye never woke-up. Mr. Holloway wrote a witness statement attesting to what he observed and his numerous attempts to awaken Raye without success.

25. Plaintiff filed an internal formal complaint against Supervisor Heeke's attempt to violate Plaintiff's right to privacy pursuant to federal Family Medical Leave Act (FMLA).

26. The Defendant's internal EEO investigative report, Exhibit C, states that Heeke denied on at least two occasions attempting to violate state and federal Medical Health Records privacy laws. Officer James Lee gave testimony that confirmed that the incident occurred as reported. Heeke was not disciplined for being untruthful for which violated company policy reference Defendant's Code of Conduct, Profession Standards and Ethnics for law enforcement officers.

27. Yet the Defendant is attempting to have the Court believe that Plaintiff's firing was allegedly related to untruthfulness and yet it appears that Heeke's untruthfulness resulted in a promotion to assistant manager.

28. Sergeant James Ross, white male, similarly situated, has received numerous complaints of inappropriate conduct and language by verbally abusing other employees, visitors and contractors.

Manager Lisa Jones filed a written complaint on or about July 2009 against Ross for disrespectful remarks. Ross denial of the allegations against him constituted being untruthful. Ross did not receive any formal discipline for his conduct.. Many of the complaints against Ross were not even investigated by Pinkert.

29. Two Loomis & Fargo Armored Car company employees, including a supervisor, filed formal complaints against Ross for verbally abusive conduct. Ross' denial of the allegations constituted being untruthful. The Defendant refused to take any disciplinary actions against Ross, white male, for both incidents.

30. William M. Francis, Assistant Vice President, (who works in the St. Louis office) interjected negative comments on Plaintiff's (black male) December 2008 Performance Management Process evaluation.

31. Francis did not interject any negative comments on similar situated Sergeant Ross' performance evaluation. Furthermore, Francis did not interject any comments on Ross' or Raye's performance evaluations, both are white males.

32. Plaintiff has no theory for what basis did William M. Francis utilized from the St. Louis office to ascertain Plaintiff's job performance at the Memphis branch?

33. Said negative comments were placed on the performance appraisal of Plaintiff as a direct attempt to intimidate Plaintiff and to retaliate for prior internal EEO and EEOC activity of Plaintiff, which has been noted elsewhere in this complaint.

34. On or about December 2, 2008, Pinkert issued Plaintiff a formal counseling documentation based on Plaintiff's alleged inappropriate conduct in addressing a fellow officer of lesser rank whom had a history of violent outbursts.

35. Said write-up was issued despite documentation from witnesses that supported the appropriateness of Plaintiff's actions on the day in question. In addition, the subordinate officer had a history of disruptive conduct at the work place, but had not been properly disciplined. Yet, her credibility was presumed over Plaintiff's who had not previously been written-up for inappropriate behavior.

36. Furthermore, Officer Vicky Dowery had weeks earlier reported the same female officer for physically and verbally threatening Dowery in the female officers' locker room. Plaintiff was present in the hallway when Officer Dowery ran out the locker room screaming and yelling, repeatedly, "That girl just got in my face and threatened me." Plaintiff escorted Dowery to the officers' lounge in an attempt to calm Dowery down. When Plaintiff attempted to leave to get further assistance, Dowery grabbed Plaintiff by the right arm and pleaded with Plaintiff not to leave her alone. Whatever transpired in the female locker room had absolutely traumatized Officer Dowery, a federal law enforcement officer.

37. Officer Dowery reported the incident to Heeke, Pinkert and Human Resources Faye Jones. Even though Plaintiff was a witness to parts of the incident, no one interviewed Plaintiff even after Officer Dowery requested and insisted upon it.

38. The Defendant's failure to properly discipline the lesser rank female officer even after Officer Dowery reported the incident allowed the lesser rank female officer to later verbally assault Plaintiff, a higher ranking officer.

39. Plaintiff avers that said write-up was a direct retaliation by Bill Pinkert because Plaintiff had previously filed a federal EEOC complaint against Pinkert.

40. Plaintiff further avers that a white male comparator, Sergeant Ross was not disciplined for similar allegations; and in fact allegations of repeated inappropriate conduct by Ross (similar in nature) were not even investigated.

41. On or about December 01, 2008 Plaintiff informed Pinkert and Heeke in Pinkert's office that the lesser rank female officer had been involved in a violent domestic abuse incident and was fired by the Shelby County Sheriff's Office. She had been employed by the Shelby County Sheriff's Office for ten years. An incident report for which is public record at the Sheriff's Office states that when the Deputy Sheriff responded to a domestic abuse call at her private residence, the Deputy observed her husband sitting in his vehicle with all the doors locked and bleeding from what appeared to be a stab wound. The husband, a Memphis attorney, was only wearing underwear.

42. Plaintiff requested Pinkert to conduct an investigation of the female officer's work history and background at the Shelby County Sheriff's Office to determine her suitability to carry a weapon and be a law enforcement officer.

43. Bill Pinkert declined to do so in an attempt to use the lesser rank black female officer against Plaintiff in a black vs. black equation.

44. In fact, it has been mentioned that the same violent lesser rank female officer wrote a statement that the Defendant was utilizing in an attempt to justify Plaintiff's unlawful employment firing. If the latter being true, this confirms why the Defendant allowed an established and well-known violent individual remain employed as a federal law enforcement officer at the Memphis branch.

45. Bill Pinkert was hired at the St. Louis office. Pinkert was involved in a physical altercation with a black male housekeeping employee in an elevator. The black male employee was fired and Pinkert was promoted to manager and reassigned to the Memphis branch on or about June 2004. Pinkert, a high school graduate, boasted about his nearly $70,000 salary.

46. From June 2004 until June 2009 during Pinkert's tenure only black male officers in the law enforcement unit were fired or forced to retire in lieu of termination or demotion. Black males; Paul Sullivan, Stacy Dees, Hubert Bass, Preston Jones, Gregory Blue and Eric Jones were all fired in the above-mentioned timeframe. Sergeant Clifton Davis, black male, was forced to retire in lieu of demotion and Lieutenant Willie Jeffries, black male, was forced to retire in lieu of termination for allegedly previous unproven allegations.

47. However, during the period noted above, Sergeant Douglas Fruitt, white male, similiar situated, physically assaulted female Officer Nina Nabors on the firing range by slapping her on the back of her head and neck area. Sergeant Fruitt initially denied the allegation and then admitted that it occurred. Officer Nabor's husband called and vehemently complained and threatened to sue. Sergeant Fuitt was still not fired for violation of state law and company policy for initially being untruthful. The Defendant refused to fire Fruitt.

48. Yet, the Defendant would have the Court believe that Plaintiff's firing, after engaging in protected activity, for allegedly untruthful statement, was indeed valid especially when compared to the violent conduct of Fruitt, white male.

11.

49. As previous stated in this complaint, the Defendant has a long history of treating African American employees with disparate and disrespectful treatment. On May 11, 2007 during the fifty year anniversary celebration for Robert Russell, black male, who worked in the housekeeping department, Dave Sapenaro, First Vice President and Chief of Operations, made reference to the word "boy" when referring to Mr. Russell. Mr. Russell was running a little late and when Russell entered the room Dave Sapenaro stated, "Where have you been boy?"

50. That's the kind of hostile work conditions that were routinely tolerated by the Defendant at both branches. Mr. Sapenaro is the No. 2 man at the entire Federal Reserve Bank of St. Louis and the Memphis branch. A responsible executive would never use such a term to describe a black man. Black and white employees were outraged by the degrading and insulting remark.

51. Sonja Sawyer, black female, Sheraton Munford, black male, Gary Dunbar, black male, Robert Smith, black male, Harold Coleman, black male, Ellis Stanley and Bobby Smith, both black males and others have filed racial discrimination charges against the Defendant as indicated by the Missouri Human Rights Commission and the St. Louis EEOC records.

52. Gary Dunbar, 26 years employee, also filed a Title VII of the Civil Rights Act of 1964, as amended, civil action in federal court on or about October 2009. Officer Dunbar was fired by the Defendant within weeks after his complaint was served, in the same manner in which Plaintiff was fired, within weeks after the Defendant was served. The Defendant violated federal law in both cases.

53. Officer Dunbar had the courage to fight this injustice by filing civil suit and suffered further injustice as his retirement pension was greatly reduced causing long-term hardship for him and his family.

54. Both branches are completely and totally managed and controlled by the St. Louis branch. They are in fact, one entity, with the Memphis branch being an extension. All disciplinary actions, including terminations, which occurred at the Memphis branch were first approved by the St. Louis branch as shown by Plaintiff's firing by EEO Officer James Price, who works at the St. Louis branch. Plaintiff will detail said firing later in this complaint.

55. Officers cross worked at both branches during special functions, events and staff shortages. Plaintiff (not while a Sergeant) and other officers at the Memphis branch worked at the St. Louis branch. Numerous officers at the St. Louis branch worked at the Memphis branch. They were in fact one entity.

56. Plaintiff received a telephone call at home on or about August 13, 2009 from EEO Officer James Price, who works at the St. Louis office stating termination of employment was effective immediately. Plaintiff was not given a reason for firing. EEO Officer Price also instructed Plaintiff not to report back to work and that Plaintiff's personal property will be boxed and mailed. Less than two weeks prior, Michael Ray, white male, was terminated for sleeping on duty and yet Raye was permitted to report back to work and retrieve his personal property. Plaintiff was basically fired by the Defendant's Equal Employment Opportunity Officer after Plaintiff filed an Equal Employment Opportunity complaint.

57. This process and procedure that the Defendant utilized to terminate Plaintiff's employment was solely used as a means to deter and intimidate other black employees from filing similar internal EEO and federal EEOC complaints.

58. The Defendant's firing of Plaintiff violated the Defendant's own company policy reference Progressive Disciplinary procedure. Plaintiff was never informed as to what policy was violated or how the policy was violated? The Defendant also failed to state were any actions taken to correct the situation prior to firing? The same procedure and process afforded to white employees.

59. Furthermore, the Tennessee Department of Labor and Workforce Development Division of Employment Security agency decision, dated September 11, 2009 states; "Claimant was discharged for violating company policy. His employer has not revealed what policy he allegedly violated or how he allegedly violated it." "The Employer has not provided sufficient evidence to prove the Claimant's actions constitute work-related misconduct." Attached hereto as Exhibit D.

60. Also, the same state agency mentioned-above issued an additional letter titled, "Time Sensitive Request for Separation information" that requested that the Defendant provide answers to particular questions such as, "What specific rule, policy, or common labor practice did the Claimant violate? Were there any prior incidents and/or warnings, and who issued the warnings? Were any actions taken to correct the situation before the discharge?"

61. The Defendant refused to comply with both State of Tennessee agency's written demands for justification pertaining to Plaintiff's employment termination.

62. Plaintiff states for the record, the Defendant could not and did not articulate a non-discriminatory and/or non-retaliatory reason for Plaintiff's employment termination to the State of Tennessee as demanded.

63. Defendants subjected Plaintiff to a hostile work environment through nit-picking Plaintiff's work and attempting to lower Plaintiff's self esteem with unwarranted criticism and retaliatory write-ups. Most egregiously, Defendant watched and monitored all aspects of Plaintiff's activities. This was a continuing and on-going discriminatory pattern how Defendant treated Plaintiff. Specifically, Plaintiff learned that on more than one occasion his locker had been searched while Plaintiff was off-duty in an attempt to monitor Plaintiff's EEOC contacts.

64. In addition, Plaintiff's December 2008 Performance Management Process evaluation, purportedly drafted by Heeke, contained untruths and exaggerations. Plaintiff further avers that several of the negative comments referenced incidents that either never occurred, or about which Plaintiff had never been informed.

65. As a direct and proximate result of Defendant's retaliatory and discriminatory actions, Plaintiff has suffered and continues to suffer substantial damages for humiliation, emotion distress, mental anguish, embarrassment and loss of enjoyment of life.

66. In addition, Plaintiff's minor child also suffered emotional distress, mental anguish and embarrassment from the direct unlawfully actions taken by the Defendant against Plaintiff; a single parent with sole custody of his child.

67. Plaintiff suffered severe mental and emotional distress from the actions of the Defendant that required Plaintiff to received a referral from his primary care physician whom recommended mental health treatment from several Qualified Mental Health Professionals.

68. Qualified Mental Health Professionals also recommend and prescribed several powerful anti-depressant medications due to Plaintiff's severe condition.

69. After Plaintiff's unlawful firing, Plaintiff lost all health, dental and medical coverage for which caused Plaintiff to lose all mental health treatment.

70. Plaintiff, an honorably discharged veteran whom served his country for over 9 years, was given a mental health evaluation and accepted in the Memphis Veterans Administration Hospital Mental Health counseling services.

71. Plaintiff's minor child was enrolled in a predominately white middle school in Columbia, SC named Ben Lippen Christian School. Due to the unlawful actions taken by the Defendant, Plaintiff was forced to discontinue minor child's preferred religious education for which caused severe distress to the minor child.

72. Plaintiff repeats and incorporates the allegations in Paragraphs 1 through 71 of his Complaint as if fully set forth herein, and for further cause of action states as follows:

73. Defendant Federal Reserve Bank of St. Louis, Memphis, Tennessee Branch's actions constitute unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. 1981(a).

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff prays that this Court award to him the following relief:

1. Judgment be entered declaring the actions of Defendant, by and through its officers, agents and employees, are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) et seq.,

2. Equitable relief, including front and back pay and benefits as may be appropriate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) et seq.,

3. Compensatory damages, available under Title VII, in an amount of $850,000.

4. Punitive damages in the amount of $2 Million as available under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) et seq.

5. Plaintiff's reasonable attorney fees and costs of the cause, as well as prejudgment interest as provided by law.

6. Such further relief as this Court deems appropriate.

7. JURY TRIAL DEMANDED.

Dated this 7th day of October 2011

Respectfully Submitted,

*John J. Johnson Jr.*
John J. Johnson Jr.
Plaintiff, Pro se
P.O. Box 54432
Millington, TN 38054
(901) 233-3787
johnjohn19592005@yahoo.com

17.